# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Willard Snyder,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>　　　　　　　　Defendant. | Case No.: 16-cv-0243-BEN-JLB<br><br>**Report and Recommendation**<br><br><br><br>[ECF Nos. 17, 19] |

This matter is before the Court on cross-motions for summary judgment. (ECF Nos. 17, 19.) Plaintiff John Willard Snyder moves under 42 U.S.C. § 405(g)[1] for judicial review of the Commissioner of Social Security Carolyn Colvin's ("Commissioner") final decision denying his claim for a period of disability and disability insurance benefits.

This Report and Recommendation is submitted to United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. After careful review of the moving and opposing papers, the administrative record, the facts, and the applicable law, the Court hereby RECOMMENDS that Plaintiff's motion for summary judgment (ECF No. 17) be GRANTED IN PART AND DENIED IN PART. The Court further RECOMMENDS that the Commissioner's cross-motion for summary judgment affirming the Administrative

---

[1] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States . . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2015).

Law Judge's ("ALJ") decision (ECF No. 19) be DENIED and the case be REMANDED for further administrative proceedings.

## I. BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on November 4, 2011, alleging disability commencing September 1, 2003.[2] (ECF No. 12-3 at 3.) The Commissioner denied the claims by initial determination on April 12, 2012. (*Id.* at 12.) Plaintiff requested reconsideration of the initial determination on May 31, 2012. (*Id.* at 14.) The Commissioner denied reconsideration on February 25, 2013. (ECF No. 12-4 at 2.) Plaintiff requested a de novo hearing before an ALJ on April 25, 2015. (*Id.* at 18.) The Commissioner granted this request and appointed an ALJ. (*Id.* at 21–22.) On May 8, 2014, Plaintiff, his attorney, and a vocational expert appeared before the ALJ, Mason D. Harrell, Jr. (ECF No. 12-2 at 37.) In a decision dated May 30, 2014, the ALJ issued an unfavorable decision and found Plaintiff was not disabled through the last date insured. (*Id.* at 29.)

Thereafter, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 2.) Plaintiff then commenced this instant action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

The Social Security Act allows for unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.[3] The scope of judicial review, however, is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error; or (2) the ALJ's determinations are not supported by

---

[2] *See* 42 U.S.C. § 423 (Disability insurance benefit payments); *see also id.* at §§ 416(i) (defining "period of disability"), 423(d)(1) (defining "disability" for purposes of entitlement to a period of disability or to disability insurance benefits).
[3] *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

substantial evidence in the record as a whole.[4]  Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."[5]  Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."[6]

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.[7]  Where the evidence can reasonably be construed to support more than one rational interpretation, the Court must uphold the ALJ's decision.[8]  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.[9]

## III. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[10] the ALJ first found that Plaintiff had not engaged in substantial gainful activity since November 4, 2011, the date of Plaintiff's application for disability insurance benefits. (ECF No. 12-2 at 24.)  Although Plaintiff had worked since his application date, the ALJ found that the work was not substantial gainful activity because Plaintiff was fired. (*Id.*)  The ALJ then found that Plaintiff had the following severe impairments: osteoarthritis of bilateral hands; degenerative arthritis of bilateral hips; sleep apnea; mixed personality disorder; anxiety disorder; and depression.[11]  (*Id.*)  Next, the ALJ found that Plaintiff does not have an impairment or a combination of impairments that meet the severity required to stop analysis at step three and award benefits. (*Id.*)  In making this determination, the ALJ found that Plaintiff has only mild restrictions in his daily living activities. (*Id.* at 25.)  At the fourth

---

[4] *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).
[5] *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).
[6] *Id.*; *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).
[7] *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).
[8] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).
[9] *See Lewis*, 236 F.3d at 509.
[10] 20 C.F.R. § 404.1520.
[11] 20 C.F.R. Part 404, Subpart P. Appendix 1.

step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work:

> except he can lift 20 pounds occasionally and 10 pounds frequently. He can be on his feet for 6 hours of an 8-hour workday and sit for 6 hours. Forceful grasping can be performed only up to 20 pounds occasionally and 10 pounds frequently. He should not drive. Mentally, the claimant can perform routine, repetitive non-public tasks, without hypervigilance, no quick decision-making or fast-paced work and only non-intense superficial interactions with co-workers.

(*Id.*)

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 28.) The ALJ relied on the testimony of the vocational expert to determine that Plaintiff could work as a silver wrapper, a cleaner, or a housekeeper.[12] (*Id.* at 28–29.) The ALJ then concluded that Plaintiff "has not been under a disability, as defined by the Social Security Act, since November 4, 2011, the date the application was filed." (*Id.* at 29.)

## IV. DISCUSSION

### A. Plaintiff's Background

Plaintiff is a fifty-three-year-old homeless male with a tenth-grade education. (ECF No. 12-2 at 41, 48.) He was last employed as a driver by County Motor Parts in 2013 but claims he was fired because his job duties were too physically and mentally difficult for him to perform. (*Id.* at 38–39.) In 2001, Plaintiff was hired as a Domino's Pizza delivery driver and worked for two years, but was laid off from that position as well. (ECF No. 12-6 at 7, 32.) He also worked as a video salesman "on and off" from 1996 to 2011. (*Id.* at 7.)

---

[12] The vocational expert also testified that if Plaintiff were to be off task fifteen percent or more of the time while working these jobs, "that would eliminate" these jobs, and there would be no other work available for Plaintiff. (ECF No. 12-2 at 58.)

4

Plaintiff's daily activities are limited in that he does not prepare meals for himself and he does not perform any household chores. (*Id.* at 28–29.) Using food stamps, he shops for food about ten minutes every day, often for a sandwich or at a fast food restaurant. (ECF No. 12-2 at 49; ECF No. 12-6 at 29.) He has no hobbies and does not engage in any social activities. (ECF No. 12-6 at 30.) A "typical day" for him includes sitting in the park and going over his life. (ECF No. 12-2 at 48.)

Concerning the severity of Plaintiff's symptoms, Plaintiff alleges in his disability application that acute anxiety, depression, high blood pressure, high cholesterol and an enlarged prostate limit his ability to work. (ECF No. 12-6 at 6.) He takes medication for his anxiety, high blood pressure, and prostate. (ECF No. 12-2 at 46; ECF No. 12-6 at 56.) In Plaintiff's Social Security Administration Function Report, he also alleges constant pain in his back and hips, arthritis in his fingers, and difficulty walking. (ECF No. 12-6 at 24.)

Throughout the Administrative Record, Plaintiff also alleges the following: He cannot walk half a block before needing to rest. (*Id.* at 31, 54.) Most days he spends approximately six hours lying down on his back and standing for more than fifteen minutes is difficult for him. (ECF No. 12-2 at 51.) His arthritis affects his ability to hold things. (*Id.*) In 1997, Plaintiff's ability to use his left hand decreased "due to a 'severe infection,'" which required surgery. (ECF No. 12-7 at 16, 35, 121.) Since January 1, 2006, Plaintiff alleges to have been homeless. (ECF No. 12-5 at 3; ECF No. 12-7 at 34.) He is constantly anxious and deals with anxiety problems four times a week minimally. (ECF No. 12-2 at 39; ECF No. 12-6 at 46.) He has anxiety from being in enclosed rooms and often feels overwhelmed. (ECF No. 12-2 at 45, 47.) Following written and spoken instructions is difficult for him, and he has trouble staying focused. (*Id.* at 42; ECF No. 12-6 at 31, 54.) He can only pay attention for five to fifteen minutes. (ECF No. 12-6 at 202, 225.) For the last fifteen to twenty years Plaintiff has suffered from depression and has thoughts of suicide. (ECF No. 12-2 at 44, 52; ECF No. 12-6 at 55.) He "burns himself with cigarettes" and "cut his leg with a machete in 2005." (ECF No. 12-6 at 75.) He was sexually abused as a child and has a history of polysubstance abuse but has been sober for more than twenty

years. (ECF No. 12-3 at 7; ECF No. 12-7 at 36–38, 135–36.) Sleeping is difficult for him, and he goes without sleeping for days or sleeps only two to three hours in a night. (ECF No. 12-6 at 27, 55, 75; ECF No. 12-7 at 6–7, 9, 35.)

**B. The ALJ Erred in Evaluating Plaintiff's Credibility**

In the hearing decision, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (ECF No. 12-2 at 26.) The ALJ discredited statements concerning Plaintiff's symptoms from arthritis and anxiety, but did not specifically address Plaintiff's statements concerning symptoms from his other severe impairments: sleep apnea, mixed personality disorder, and depression. (*See* ECF No. 12-2.) With respect to Plaintiff's alleged symptoms caused by arthritis and anxiety, the ALJ's reasons for discrediting Plaintiff's testimony appear to be that: (1) the medical record does not support the alleged severity of Plaintiff's symptoms; (2) Plaintiff has a limited medical record and pursued a conservative course of treatment; and (3) Plaintiff did not appear anxious or uncomfortable at the hearing. (ECF No. 12-2 at 26–27.)

Plaintiff moves for summary judgment on the ground that the ALJ failed to meet the clear and convincing legal standard for discrediting Plaintiff's testimony concerning the intensity of his symptoms.[13] (ECF No. 17-1 at 2:11–13, 6:9–11.) Respondent disagrees. (ECF Nos. 19, 20.) For the reasons explained below, the Court concludes that the ALJ erred by failing to articulate clear and convincing reasons to discredit Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms. The Court further concludes remand is appropriate.

//

---

[13] Plaintiff also argues the ALJ erred in that "the ALJ simply sets forth the oft rejected boilerplate language numerous courts have rejected as boilerplate." (ECF No. 17-1 at 6:14–15.) However, because the Court concludes that the ALJ's analysis is insufficient for the reasons set forth herein, it need not address this argument.

### i. Legal Standard

If an ALJ finds that a claimant's testimony as to the severity of his pain and impairments is unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."[14] As outlined by the Ninth Circuit, there is a two-step process an ALJ is to employ to assess subjective pain testimony.[15] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"[16] Absent such evidence, subjective pain testimony may be disregarded.[17] Second, if the ALJ determines that the claimant meets this threshold, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'"[18]

To support a finding that the claimant was not credible, the ALJ must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he] claims."[19] The ALJ must make specific findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints are not credible."[20] The ALJ can consider the following when assessing the claimant's credibility: (1) his reputation for truthfulness; (2) inconsistences in either his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of his condition.[21]

//

---

[14] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).
[15] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007).
[16] *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).
[17] *Tommasetti*, 533 F.3d at 1039; *see also* 42 U.S.C. § 423.
[18] *Lingerfelter*, 504 F.3d at 1036 (quoting *Smolen v. Charter*, 80 F.3d 1273, 1281 (9th Cir. 1996)).
[19] *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).
[20] *Dodrill*, 12 F.3d at 918.
[21] *Thomas,* 278 F.3d at 958–59.

The reviewing court must bear in mind that it should not "second-guess" an ALJ's credibility determination.[22] Accordingly, where an ALJ's credibility determination is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting the claimant's testimony are improper.[23] However, "[t]he clear and convincing standard is the most demanding required in Social Security cases,"[24] and thus, the standard "is not an easy requirement to meet."[25]

Courts may only review the ALJ's articulated rationale, and "[i]f the [ALJ's] decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand."[26] The Ninth Circuit has sympathized with the "large volume of disability cases that the agency must adjudicate," but "each case represents a citizen's claim of serious disability," and accordingly, courts should not take lightly their responsibility under 42 U.S.C. § 405(g).[27] Courts in their reviewing authority "should not be forced to speculate" the reasoning behind the ALJ's findings.[28]

Here, the parties do not dispute that the ALJ reasonably concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (ECF No. 12-2 at 26.) The ALJ did not find any evidence of malingering, but nonetheless discredited Plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms reasonably caused by his medically determinable impairments. (*Id.*) Plaintiff argues that the ALJ's decision must

---

[22] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)); *see also Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).
[23] *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).
[24] *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).
[25] *Garrison v. Colvin*, 759 F.3d 995, 1105 (9th Cir. 2014).
[26] *Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (quoting *Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987)).
[27] *Lewin v. Schweiker*, 654 F.2d 631, 634–35 (9th Cir. 1981) (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)).
[28] *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also Lewin*, 654 F.2d at 635 ("It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings." (quoting *Baerga*, 500 F.2d at 312)).

be reversed as legally erroneous because the ALJ failed to articulate sufficient reasons to find Plaintiff not credible. (ECF No. 17-1 at 3:24–25, 4:1–2.) Defendant disagrees, contending that the ALJ provided "specific, independent, and well supported bases for discounting [Plaintiff]'s allegations." (ECF No. 19-1 at 7.) Consequently, the Court must assess whether the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony concerning his subjective pain that are supported by substantial evidence in the record.

### ii. Objective Medical Evidence

Plaintiff argues that the ALJ improperly rejected his credibility solely on the basis that Plaintiff's testimony was unsupported by *objective* medical evidence, and thus, the ALJ's adverse credibility finding is insufficient as a matter of law. (ECF No. 17-1 at 7:4–6, 8:1–2 (emphasis added).) Plaintiff further argues that once the ALJ established the presence of a severe medical impairment, the ALJ was required to articulate clear and convincing reasons to reject Plaintiff's testimony, but failed to do so. (*Id.* at 8.) Defendant counters by arguing that Plaintiff misstates the ALJ's findings because the ALJ properly relied on Plaintiff's *overall* medical record and not solely on objective medical evidence. (ECF No. 19-1 at 5–6 (emphasis added).) Defendant points out that the overall medical record upon which the ALJ relied included limited and conservative medical treatment as well as objective medical evidence. (*Id.* at 6–8.) Although the ALJ's opinion is not a model of clarity on this point, the Court agrees with Defendant that the ALJ based his credibility determination on Plaintiff's *overall* medical record and not solely on *objective* medical evidence.

The ALJ did certainly consider the objective medical evidence as a relevant factor when discrediting Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling

effects."[29] Therefore, the Court will turn to the issue of whether the ALJ erred by failing to offer "specific, clear and convincing reasons" for determining that the absence of objective, corroborating medical evidence undermines the credibility of Plaintiff's symptom testimony.[31]

In the context of the ALJ's credibility analysis, the only symptom testimony of Plaintiff that the ALJ specifically referenced was his testimony that: (1) "he cannot work due to anxiety and being fearful, and also due to pain in his neck, back, feet and hands" (ECF No. 12-2 at 26); (2) "he has stress when in an enclosed room" and that he was feeling anxiousness at his hearing (*id.*); and (3) he has "severe and disabling pain from arthritis and problems with anxiety" (*id.* at 27).[32] Thus, the Court assumes for purposes of this analysis, that this is the testimony of Plaintiff the ALJ rejected as incredible.[33]

The Court agrees with Plaintiff that the ALJ did not present clear and convincing reasons for basing his adverse credibility determination on objective medical evidence. As described below, the ALJ fails to adequately articulate the nexus between the statements of Plaintiff that the ALJ discredits and the objective medical evidence that purportedly undermines them. In addressing the credibility of Plaintiff's testimony, the ALJ recited selections from Plaintiff's medical record, beginning with a list of Plaintiff's visits to medical facilities in recent years:

> Records indicate that the claimant sought treatment from Grossmont Hospital Emergency Department on October 11, October 29, November 1, and November 14, 2011, for chest pain

---

[29] *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).

[31] *Smolen*, 80 F.3d at 1281 (when the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.").

[32] At the hearing, Plaintiff further testified that he deals with anxiety problems "four times a week at least," and just sitting or lying down can make him anxious. (ECF No. 12-2 at 47.) Plaintiff also testified that during the hearing he was having "trouble with [his] neck," there were stiff knots in his back, and his feet were "tingling." (*Id.* at 49.)

[33] One of the failings of the ALJ's hearing decision is the ALJ's failure to specify which statements of Plaintiff he rejects as incredible.

10

> and anxiety, having run out of medication. An EKG was normal and the claimant was treated with Ativan at each visit and discharged in good condition. On November 30, 2011, the claimant was seen for follow-up at Family Health Centers of San Diego. Lab testing was normal and he was referred for psychiatric evaluation for evaluation of anxiety. Blood pressure was normal. Records from Chase Avenue Family Health Center indicate regular lab tests and medication refills for anxiety medication throughout 2012 and 2013. In May 2012, the claimant reported that his therapy sessions went well, he was working on relaxation and breathing exercises, and he was walking daily. The claimant was seen at Sharp Grossmont Hospital Emergency Department on March 30, 2013 with complaints of increased anxiety and chest tightness. He stated he had started a new job and was under stress. The claimant was prescribed Ativan and discharged in stable condition. He was seen again on May 22, 2013, with the same complaint and request for prescription refill. An EKG was normal and chest x-ray was negative.

(*Id.* at 26. (citations omitted).)

The ALJ then referenced the evaluations of two examining physicians, beginning with Plaintiff's psychiatric consultation with Dr. Jaga Nath Glassman. (*Id.*) The ALJ cited to Dr. Glassman's diagnosis stating that Plaintiff suffers from "anxiety disorder, not otherwise specified, dysthymic disorder, polysubstance abuse in long term remission, mixed personality disorder, borderline antisocial features, sleep apnea," and has a Global Assessment of Functioning ("GAF") score of 60, indicating moderate symptoms. (*Id.*) Next, the ALJ cited to Dr. Frederick W. Close's evaluation of Plaintiff where he states that Plaintiff "could work at a medium exertional level," but has "some mild bilateral lumbar spasm and limited range of motion in both hips." (*Id.* at 27.)

After listing Plaintiff's visits to medical facilities and diagnoses from two examining physicians, the ALJ concluded that "the medical record, as highlighted above, casts doubt on the credibility of the claimant's allegations." (ECF No. 12-2 at 27.) Nowhere did the ALJ connect the testimony he discredited with the medical evidence which undermined it, nor did he analyze that connection. Instead, the ALJ made a generalized and conclusory

11

finding that Plaintiff's medical record undermines his credibility. The ALJ's credibility determination lacks findings sufficiently specific to permit this Court to conclude that the ALJ did not arbitrarily discredit claimant's testimony about the intensity of his symptoms.[34] Therefore, the ALJ's analysis of the objective medical evidence does not meet the clear and convincing standard required for credibility determinations.

### iii. Limited Medical Record and Conservative Course of Treatment

As set forth above, the ALJ also discredited Plaintiff's pain testimony on the grounds that Plaintiff's medical record is limited and reflects a conservative course of treatment for Plaintiff's arthritis and anxiety symptoms. (ECF No. 12-2 at 27.) In assessing a claimant's credibility, an ALJ may rely upon an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."[35] Evidence of "'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."[36] However, an ALJ "must not draw any inferences about a[] [claimant]'s symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the [claimant] may provide, or other information in the case record."[37] Indeed, a conservative course of treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has good reason for not seeking more aggressive treatment."[38]

Here, the ALJ relied upon the limited nature of Plaintiff's medical records and the conservative treatment regimen followed by Plaintiff and prescribed by physicians to discredit Plaintiff's statements concerning the severity of his symptoms from arthritis and

---

[34] *See Tommasetti*, 533 F.3d at 1039.
[35] *Smolen*, 80 F.3d at 1284.
[36] *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).
[37] *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoting Soc. Sec. Ruling 96-7P (superseded by Soc. Sec. Ruling 16-3P)); *see also* Soc. Sec. Ruling 16-3P, 2016 WL 1119029, at *8 (Mar. 16, 2016) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons why he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").
[38] *Carmickle*, 533 F.3d at 1162 (citing *Orn*, 495 F.3d at 638).

anxiety. The ALJ referenced Plaintiff's limited records and failure to seek more substantive treatment, stating that "[a]lthough the claimant alleges severe and disabling pain from arthritis and problems with anxiety, the medical record is fairly limited. The claimant has not sought the type of treatment one would expect of a totally disabled individual." (ECF No. 12-2 at 27.) In light of the record before the ALJ in this case concerning Plaintiff's homelessness and lack of insurance and income, the ALJ should have articulated whether he explored Plaintiff's limited resources as a possible reason why Plaintiff might not have a treatment record consistent with the alleged severity of his symptoms.

Plaintiff is a homeless individual, a fact the ALJ recognized twice in his hearing decision but failed to discuss when addressing Plaintiff's limited medical records. (*Id.* 25–26.) At the hearing, Plaintiff described a number of ways in which his homelessness and adverse financial situation hinder his ability to seek and afford medical treatment: He relies on food stamps as his sole source of income. (*Id.* at 40.) He suffers from high blood pressure and resorts to checking his blood pressure at Rite Aid's free monitors. (*Id.* at 46.) He has not sought medical treatment in the past because he was uninsured. (*Id.* at 47, 53.) He is sparing with his anxiety medication because it is difficult for him to obtain without insurance. (*Id.* at 55.) He cannot afford to take public transportation and must walk everywhere he goes. (*Id.* at 51.) He claims that he left a hospital against medical advice because he could not pay for the further testing doctors wanted to perform. (*Id.* at 55; ECF No. 12-7 at 138.) These facts, separately or in combination, could provide reasons why Plaintiff sought only the degree and amount of medical treatment that he did.[39]

Another indication that the nature and extent of the medical care Plaintiff pursued was driven by his limited resources is Plaintiff's pattern of emergency room visits. As the ALJ identified, Plaintiff often resorts to emergency rooms when experiencing painful

---

[39] *See Gamble v. Charter*, 68 F.3d 319, 321 (9th Cir. 1995) (asserting that "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds").

13

symptoms or to refill his anxiety, blood pressure, or prostate medications. (ECF No. 12-2 at 26–27; ECF No. 12-7 at 6, 9, 12, 16, 133, 144, 153.) Other district courts in the Ninth Circuit have found such behavior to be consistent with a plaintiff having a limited medical history because his lack of income precludes him from regularly visiting a primary care physician.[40] As explained by the district court in *Blumer v. Colvin*:

> Such a pattern of treatment is, in fact, an all too common occurrence among individuals who lack health insurance, *i.e.* they are forced to seek emergency care (which cannot legally be denied to them), but then have difficulty accessing preventative and follow-up care from a primary care physician because they have no insurance.[41]

At multiple emergency room visits, the emergency room physician providing care noted Plaintiff's need to seek regular treatment from a primary care physician. One emergency room physician stated Plaintiff needed "to be under the direct care of a primary care doctor, especially because [Plaintiff] has elevated blood pressure." (ECF No. 12-7 at 14.) Another emergency room physician provided Plaintiff with discharge instructions to "contact primary care doctor in 1 day" for both a cardiology and psychiatry referral. (ECF No. 12-7 at 138.)

An "ALJ must consider all relevant evidence in the record" when making credibility findings.[42] Here, the ALJ failed to articulate if he considered the impact that Plaintiff's homelessness and lack of insurance and income have on his ability to obtain medical care. In light of the record before the ALJ, the ALJ erred in making an adverse credibility determination based on Plaintiff's limited medical record and conservative course of

---

[40] *See, e.g.*, *Calley v. Colvin*, No. 14cv05772, 2015 WL 4430578, at *5 (W.D. Wash. July 20, 2015) ("As outlined by the ALJ, plaintiff visited the emergency room, often the only financially feasible treatment available to those without income."); *Blumer v. Colvin*, No. 14cv00147, 2015 WL 520165, at *5 (E.D. Wash. Feb. 9, 2015) (stating that the ALJ failed to take into account the plaintiff's homelessness and lack of insurance when assessing the plaintiff's limited treatment record and credibility).
[41] 2015 WL 520165, at *5.
[42] *Hall v. Colvin*, No. 12cv5672, 2013 WL 5663087, at *9 (N.D. Cal. Oct. 17, 2013).

treatment without articulating whether he explored Plaintiff's limited resources as a possible reason for why Plaintiff might not have a treatment record consistent with the alleged severity of his symptoms.[43]

In addition to noting the conservative nature of the medical treatment Plaintiff sought, the ALJ discussed the conservative nature of the treatment Plaintiff's physicians recommended as a factor undermining Plaintiff's credibility, stating that:

> Given the allegations of such severe and disabling impairments, one might expect to see a greater level of intervention and or more aggressive treatment options. On the contrary, the limited medical records available indicate a rather mild and conservative course of treatment primarily in the form of medication monitoring and minimal routine follow-up care. This suggests that the claimant may have exaggerated his symptoms and their true limitations. The claimant appears to regularly run out of medication and then goes to the emergency department for refills.

(ECF No. 12-2 at 27.)

With respect to anxiety,[44] the ALJ may have aptly described the prescribed treatment and follow-up recommendations emergency room physicians provided Plaintiff as "medication monitoring and minimal routine follow-up care." (*Id.*) The emergency room physicians' treatment for Plaintiff's anxiety at various visits mostly included: (1) refills of Ativan for anxiety; (2) intravenous delivery of Ativan; (3) recommendations to receive

---

[43] *See, e.g.*, *Wright v. Astrue*, No. 08cv6161, 2009 WL 2827576, at *11 (D. Or. Aug. 24, 2009) ("The ALJ erred by finding [the plaintiff]'s complaints lacked credibility due to her failure to seek out more than intermittent treatment without exploring the impact of her lack of insurance and periodic homelessness on her ability to pursue treatment."); *Shultes v. Colvin*, No. 13cv1448, 2014 WL 4723883, at *9 (W.D. Wash. Sept. 23, 2014) ("Plaintiff appears to have had valid reasons for the inconsistent treatment that were not discussed by the ALJ. . . . the record indicates that the plaintiff is homeless and has been in a state of homelessness for the past 10 years.").

[44] Although the ALJ begins his analysis of Plaintiff's limited medical record pertaining to both arthritis and anxiety, the ALJ ultimately focuses only on physicians' treatment recommendations with respect to anxiety. The "medication monitoring and routine follow-up care" to which the ALJ refers appears in the record only in the context of Plaintiff's emergency room visits to address anxiety and hypertension. (ECF No. 12-2 at 27.)

15

regular medical monitoring and future prescription refills from a primary care physician; (4) recommendations to substitute different medications for Ativan to treat anxiety; and (5) recommendations for psychiatric consultation. (ECF No. 12-7 at 7, 14, 18, 56, 62, 94.) Although this treatment might fairly be described as conservative in nature, the ALJ's analysis does not meet the clear and convincing standard because the ALJ fails to specifically identify what allegations of anxiety he discredited with the specific course of conservative treatment that discredits them and why. Furthermore, the ALJ does not specify what "more aggressive treatment options" one would expect to see with respect to severe symptoms from anxiety.[45]

In conclusion, although the treatment prescribed by physicians in regard to Plaintiff's anxiety may be conservative in nature, the ALJ's analysis of Plaintiff's limited medical record and course of treatment for arthritis and anxiety is not sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds.

### iv. The ALJ's Observations of Plaintiff at the Hearing

Here, the ALJ used his observations of Plaintiff at the hearing as a third factor in assessing Plaintiff's credibility. Specifically, the ALJ stated that "[d]espite [Plaintiff's] allegations of anxiety in an enclosed room and particularly at this hearing," Plaintiff "did not appear anxious or uncomfortable." (ECF No. 12-2 at 27.) When forming a conclusion

---

[45] Additionally, district courts in the Ninth Circuit have been cautions when reviewing an ALJ's determination that a claimant's treatment options are conservative or not aggressive enough. *See, e.g.*, *Boitnott v. Colvin*, No. 14cv2977-BTM (DHB), 2016 WL 362348, at *4 (S.D. Cal. Jan. 29, 2016) (rejecting an ALJ's characterization of a claimant's treatment as "routine and conservative" in part because "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment" of the claimant's conditions); *Childress v. Colvin*, Case No. 13cv03252, 2014 WL 4629593, at *12, *12 n.2 (C.D. Cal. Sept. 9, 2014) (stating that "[t]here is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment," except for the use of non-prescription medications, which are "consistently viewed as 'conservative treatment'"); *Landaverde v. Colvin*, No. 15cv07886, 2016 WL 4487828, at *5 (C.D. Cal. Aug. 28, 2016) ("There is no evidence in the record that more frequent or aggressive treatment was available to treat Plaintiff's conditions, and the ALJ was not qualified to draw his own inference regarding whether such treatment was available.").

about a claimant's credibility, an ALJ may use "ordinary techniques of credibility evaluation."[46] Such ordinary techniques may include an ALJ's "specific observations of the claimant at the hearing."[47] However, an ALJ's observations may not form the sole basis for discrediting a claimant,[48] and "an ALJ should be cautious about substituting his or her own brief observations for the opinion of a treating physician, especially in a case involving psychological disability."[49]

The ALJ considered Plaintiff's "apparent lack of discomfort during the hearing" as a factor in reaching his credibility conclusion, while also acknowledging the correct legal standard that his observation is not a "conclusive indicator" of Plaintiff's day-to-day anxiety levels.[50] (*Id.*) Because the other two factors the ALJ articulated in consideration of Plaintiff's credibility—objective medical evidence and conservative course of treatment—are not supported by clear and convincing reasons, the ALJ's observations of Plaintiff at the hearing cannot serve as the sole basis for discrediting Plaintiff. As the Ninth Circuit has stated, "[b]ecause the ALJ's other reasons for rejecting [the claimant]'s

---

[46] *Burnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 604 n.5).

[47] *Ortiz v. Astrue*, No. 08cv00598, 2009 WL 1516320, at *5 (E.D. Cal. May 29, 2009); *see also* Soc. Sec. Ruling 16-3P, 2016 WL 1119029 at *7 (S.S.A. Mar. 16, 2016) ("The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.").

[48] *See Hodge v. Barnhart*, 76 F. App'x 797, 799 (9th Cir. 2003) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1147–48 (9th Cir. 2001)); *Fair*, 885 F.2d at 602 ("That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain." (citing *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984))).

[49] *See Butler v. Apfel*, No. 97cv36004, 189 F.3d 472, 1999 WL 595335, *8 (9th Cir. Aug. 9, 1999) (unpublished disposition) (citing *Lewis v. Weinberger*, 541 F.2d 417, 421 (4th Cir. 1976) (stating that in cases where the plaintiff alleges psychological disability, the ALJ's observation of the plaintiff "is entitled to little or no weight")).

[50] Such a limitation seems particularly appropriate in a case such as this where the ALJ concluded, based upon his observations, that Plaintiff was not experiencing anxiety and discomfort at the hearing even as Plaintiff was testifying that he was, indeed, feeling intense anxiety and discomfort at that moment. During the hearing, Plaintiff answered affirmatively when the ALJ asked multiple times if he was stressed from being in an enclosed room. (*Id.* at 45, 48.) Twice, Plaintiff asked if he could testify standing up to alleviate his back and neck pain. (*Id.* at 47, 49.) On three different occasions, he stated that he felt overwhelmed, and when the ALJ asked if Plaintiff felt "panicky," he said, "Yes . . . sometimes it is just overwhelming, where I feel like I'm gonna die." (*Id.* at 47, 49, 54.) Plaintiff also stated that he felt "lost" and he could not remember what he would like to say. (*Id.* at 53.)

testimony fail, the ALJ's personal observations standing alone cannot support the adverse credibility finding."[51] Thus, the ALJ's observation of Plaintiff at the hearing alone is not a legally sufficient basis for his adverse credibility determination.

### v. Conclusion

As the above analysis details, the ALJ took three factors into consideration to assess Plaintiff's credibility. The first two were not supported by clear and convincing reasons, and the third one cannot stand alone.

Additionally, although only indirectly raised in this appeal, the ALJ's analysis at step four of the hearing decision is further deficient in that his credibility discussion of Plaintiff's testimony is seemingly limited to Plaintiff's alleged symptoms from anxiety and arthritis only. The ALJ recognized at step two that Plaintiff, in addition to arthritis and anxiety, suffers from the severe impairments of sleep apnea, mixed personality disorder, and depression. (ECF No. 12-2 at 23.) The Court finds no explanation from the ALJ as to why Plaintiff's statements concerning the intensity, persistence and limiting effects of symptoms from these additional severe impairments are not entirely credible. Thus, the Court is left to speculate as to whether and why the ALJ discredited Plaintiff's allegations and testimony concerning his "constant depression," which allegedly rendered him suicidal and incapable of performing even basic work. (*See* ECF No. 12-2 at 52; ECF No. 12-3 at 3; ECF No. 12-7 at 34.)

In sum, the ALJ erred in failing to articulate clear and convincing reasons for his conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (ECF No. 12-2 at 26.) Because the ALJ appears to have based Plaintiff's disability status in large part on his credibility analysis, the ALJ committed legal error that is not harmless, and thus, warrants remedy.

//

//

---

[51] *Orn*, 495 F.3d at 639–40.

## C. Remand is Appropriate

Plaintiff asks the Court to reverse for the payment of benefits, or in the alternative, remand for the correction of legal errors. (ECF No. 17-1 at 11:11, 21–22.) Defendant maintains the position that the ALJ's decision is "free from reversible legal error," but if the Court overturns the ALJ's decision, remand is the proper remedy. (ECF No. 19-1 at 8.)

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."[52] "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."[53] Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."[54] On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."[55]

Here, the ALJ committed legal error that was not harmless, but this is not a case where further administrative proceedings would lack purpose. Therefore, remand for further proceedings is the appropriate remedy.

//

//

---

[52] *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).
[53] *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).
[54] *Lewin*, 654 F.2d at 635.
[55] *Benecke*, 379 F.3d at 593. Before remanding a case to the ALJ with instructions to award benefits, three requirements must be met:
> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

19

## V. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the following:

(1) Plaintiff's motion for summary judgment (ECF No. 17) be **GRANTED IN PART AND DENIED IN PART** and that this case be **REMANDED** for further proceedings consistent with this Report and Recommendation;[56]

(2) The Commissioner's cross-motion for summary judgment (ECF No. 19) be **DENIED**.

IT IS HEREBY ORDERED that any written objections to this Report and Recommendation must be filed with the Court and served on all parties **no later than May 2, 2017**. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **May 9, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.[57]

Dated: April 17, 2017

*[signature: Jill Burkhardt]*

Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[56] The Court recommends that Plaintiff's motion be denied insofar as he seeks reversal and an award of benefits.

[57] *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).